IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

LYUBOV R. Y.,

        Plaintiff,

   v.                                Civil Action No.
                                       6:20-CV-1443 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF

OFFICE OF PETER W.            PETER W. ANTONOWICZ, ESQ.
ANTONOWICZ
148 West Dominick Street
Rome, NY 13440

FOR DEFENDANT

SOCIAL SECURITY ADMIN.      CANDACE LAWRENCE, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on June 22, 2022, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)   Defendant's motion for judgment on the pleadings is GRANTED.

2)   The Commissioner's determination that the plaintiff was not

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

*[signature]*
David E. Peebles
U.S. Magistrate Judge

Dated:   June 24, 2022
         Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LYUBOV Y.,
                                          Plaintiff,

-v-                                       6:20-CV-1443

COMMISSIONER OF SOCIAL SECURITY,

                                          Defendant.
------------------------------------------------------------x
```

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
June 22, 2022
100 South Clinton Street, Syracuse, New York


For the Plaintiff:
(Appearance by telephone)

    LAW OFFICE OF PETER W. ANTONOWICZ
    148 West Dominick Street
    Rome, New York 13440
    BY: **PETER W. ANTONOWICZ, ESQ.**

For the Defendant:
(Appearance by telephone)

    SOCIAL SECURITY ADMINISTRATION
    J.F.K. Federal Building
    Room 625
    Boston, Massachusetts 02203
    BY: **CANDACE LAWRENCE, ESQ.**


*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1            (The Court and all parties present by telephone.
2   Time noted:  11:11 a.m.)
3            THE COURT:  Let me begin by thanking both counsel for
4   excellent and spirited presentations.
5            Plaintiff has commenced this proceeding pursuant to
6   42, United States Code, Section 405(g) to challenge an adverse
7   determination by the Acting Commissioner finding that she was
8   not entitled to the disability insurance benefit, Title II
9   benefits, that she applied for.
10           The background is as follows:  Plaintiff was born in
11  July of 20 -- I'm sorry, 1970.  She's currently 51 years of age.
12  She was 47 at the alleged onset of her disability in March of
13  2017.  Plaintiff is originally from Belarus and came to the
14  United States in roughly 2018 -- no, I'm sorry, she has been --
15  as of 2018, she had been here for 29 years.  Plaintiff stands
16  5'6" in height and weighs 238 pounds, which qualifies her as
17  obese.  Plaintiff attended college in Latvia and graduated with
18  some sort of culinary degree in baking and/or cooking.  While in
19  school, she attended regular classes.
20           Plaintiff lives in Deerfield, New York.  It's
21  unclear, but it appears she may be separated.  She has six
22  children, all or some of whom in 2018 were residing with her.
23  Plaintiff drives.  Plaintiff worked as a nurse's aide between
24  May of 2004 and March of 2017.  She was engaged in home care for
25  the disabled.  Plaintiff suffered a Workers' Compensation

1   on-the-job injury on January 11, 2017, when she slipped on ice
2   causing injury to her head, neck, back, and bilaterally to her
3   legs.
4           Physically, plaintiff suffers from degenerative disc
5   disease of the cervical and lumbar spine, hypertension, obesity,
6   and a history of kidney cysts.  The plaintiff underwent MRI
7   testing of the cervical and lumbar spines in January of 2018 and
8   again, it appears, in April of 2019 with mild to moderate
9   results.  Plaintiff refused, however, an EMG nerve conduction
10  study and injections, claiming that she is afraid of needles.
11  Plaintiff mentally suffers from depression and anxiety, but has
12  undergone no specialized treatment or psychiatric
13  hospitalization.  Plaintiff has undergone chiropractic
14  treatment, as well as physical therapy for her lumbar and
15  cervical spine issues.
16          Plaintiff has treated with Mohawk Valley Nephrology
17  for her history of kidney cysts, Slocum-Dickson Medical Group,
18  including Dr. Kenneth Visalli, who's her primary caretaker, and
19  Dr. Prasanna Kumar.  She has also treated with neurologist,
20  Mr. Ramesh Cherukuri, and on one occasion with Dr. Nicholas
21  Qandah on February 5, 2018.
22          In terms of activities of daily living, plaintiff is
23  able to dress, to bathe, although she requires assistance in the
24  shower, groom, drive short distances, watch television, and
25  spend time with family.  Her family, however, does most of the

1  cooking, cleaning, and laundry.
2           Procedurally, plaintiff applied for Title II benefits
3  under the Social Security Act on February 5, 2018, alleging an
4  onset date of March 9, 2017.  She claims disability based on
5  back issues, high blood pressure, leg and arm pain,
6  fibromyalgia, and kidney cysts.  A hearing was conducted by
7  Administrative Law Judge, or ALJ, Elizabeth Koennecke.  ALJ
8  Koennecke issued an unfavorable decision on February 20, 2020.
9  That decision became a final determination of the agency on
10 October 20, 2020, when the Social Security Administration
11 Appeals Council denied plaintiff's application for a review.
12 This action was commenced on November 23, 2020, and is timely.
13          In her decision, ALJ Koennecke applied the familiar
14 five-step sequential test for determining disability.  She first
15 determined that plaintiff retains insured status through
16 December 31, 2022.  At step one, she concluded that plaintiff
17 had not engaged in substantial gainful activity since March 9,
18 2017, her alleged onset date.
19          At step two, she determined that plaintiff does
20 suffer from severe impairments that impose more than minimal
21 limitations on her ability to perform basic work functions,
22 including mild degenerative disc disease of the lumbar spine and
23 the cervical spine, as well as hypertension.
24          At step three, ALJ Koennecke concluded that
25 plaintiff's conditions do not meet or medically equal any of the

1   listed presumptively disabling conditions set forth in the
2   Commissioner's regulations, specifically focusing on listing
3   1.04.  After surveying the evidence of record, ALJ Koennecke
4   concluded that plaintiff retains the residual functional
5   capacity, or RFC, to perform light work as defined in the
6   regulations with the exception that she is only able to
7   occasionally stoop.
8           Applying that RFC finding at step four, ALJ Koennecke
9   concluded that plaintiff is incapable of performing her past
10  relevant work as a nurse assistant and proceeded to step five
11  where she concluded based upon the Medical-Vocational Guidelines
12  set forth in the Commissioner's regulations, and specifically
13  guideline or Grid Rule 202.21, that plaintiff is not disabled.
14          In arriving at that determination and after noting
15  the Commissioner's burden of proof at step five, ALJ Koennecke
16  concluded that the additional limitation of only occasional
17  stooping has little or no effect on the occupational base on
18  which the grids are predicated, citing Social Security Ruling
19  83-10.
20          As you know, the Court's function in this instance is
21  to determine two things, whether correct legal principles were
22  applied and whether the resulting determination is supported by
23  substantial evidence, which is defined as such relevant evidence
24  as a reasonable mind would find sufficient to support a
25  conclusion.  As the Second Circuit has noted in *Brault v. Social*

1  *Security Administration* Commissioner, 683 F.3d 443 from the
2  Second Circuit, 2012, this is a demanding, very deferential
3  standard.  And under that standard, once a fact is found by an
4  ALJ, that fact can be rejected only if a reasonable factfinder
5  would have to conclude otherwise.
6          In this case, the plaintiff raises three arguments.
7  First, she claims error in the Administrative Law Judge's
8  weighing of the medical evidence of record, specifically
9  focusing on medical source statements from two treating sources,
10 Dr. Kenneth Visalli and Dr. Ramesh Cherukuri.  And that's
11 spelled C-H-E-R-U-K-U-R-I, despite what I said earlier.  She
12 also notes that Dr. Wolf found moderate limitations that are
13 inconsistent with light work, and further notes that there was
14 no mention by the Administrative Law Judge of an IME report of
15 Dr. Bradley Wiener who conducted an examination in connection
16 with plaintiff's Workers' Compensation claim.  The second
17 argument raised is that the Administrative Law Judge improperly
18 analyzed and considered plaintiff's subjective complaints of
19 symptomology.  And the third is that it was error for the
20 Administrative Law Judge to rely on the grids or
21 Medical-Vocational Guidelines without consulting with a
22 vocational expert in order to determine at step five whether
23 there was work available that plaintiff is capable of
24 performing.
25         Because of the date on which this application in this

1    case was filed, the new amended regulations that took effect in
2    March of 2017 apply to consideration of medical opinions in the
3    record.  Under those regulations, an ALJ does not defer or give
4    any specific evidentiary weight, including controlling weight,
5    to any medical opinions or prior administrative medical
6    findings, including those from a claimant's medical sources, 20
7    C.F.R. Section 404.1520(c)(A).  Instead, an ALJ must consider
8    those opinions and apply relevant factors, including primarily
9    supportability and consistency of those opinions.  The ALJ must
10   articulate how persuasive he or she found each medical opinion
11   and must explain how he or she considered the supportability and
12   consistency of those medical opinions.  The ALJ may also, but is
13   not required to, explain how he or she considered other relevant
14   factors which are set forth in the regulations.
15           There are five opinions in the record concerning
16   plaintiff's physical capabilities.  The first is from -- and I'm
17   not taking these necessarily chronologically, state agency
18   consultant Dr. R. Pradhan from July 3, 2013.  It appears in the
19   record as part of Exhibit 2A and also is reiterated in
20   Exhibit 9F.  Essentially, that's at page 58 to 72 and 755 to
21   756.  It concludes that plaintiff is capable of performing light
22   work, except she can only occasionally stoop.  It is fully
23   consistent with the RFC determination.  The Administrative Law
24   Judge concluded that Dr. Pradhan's opinion was very persuasive
25   at page 17.

1           I note that while Dr. Pradhan did not examine the
2    plaintiff, nonetheless, his or her opinion being a state agency
3    consultant familiar with the regulations and having reviewed
4    available medical records can supply substantial evidence and
5    can even trump a medical source opinion from a treating source,
6    *Heim v. Commissioner of Social Security*, 2018 WL 1621521 from
7    the Northern District of New York, March 29, 2018, *Camille v.
8    Colvin*, 652 F. App'x 25 from the Second Circuit, 2016, and *A.D.
9    v. Commissioner of Social Security*, 2018 WL 3232347 from the
10   Northern District of New York, June 29, 2018.
11           The second opinion is from Dr. Kautilya Puri from
12   August 9, 2017.  It appears at 271 to 275 of the Administrative
13   Transcript.  Dr. Puri does find moderate limitations in
14   plaintiff's ability to squat, bend, stoop, and kneel and mild
15   limitations to lifting weights.  The administrative -- I'm
16   sorry, the Administrative Law Judge did find the opinion of Dr.
17   Puri persuasive, but noted at page 17 that it would not preclude
18   plaintiff's ability to perform light work.
19           The third is from Dr. Ivan Wolf, June 11, 2018.  It
20   appears at 748 to 754 of the Administrative Transcript.  Dr.
21   Wolf finds moderate limitations in plaintiff's ability to --
22   among other things, overhead motion of her arms, squatting,
23   repetitive forward bending, kneeling, and climbing.  The
24   Administrative Law Judge concluded that the opinion was
25   persuasive at page seven, but, again, did not preclude

1  plaintiff's ability to perform light work.
2           Dr. Kenneth Visalli issued a medical source statement
3  on February -- December 13, 2019.  It appears at 818 to 819.  It
4  is basically a checkbox form.  It is extremely limiting.  It
5  limits plaintiff to, for example, lift and carry on an
6  occasional basis less than five pounds, can only stand or walk
7  without leaning or supportive device one hour or less, can only
8  sit for four hours or less in an eight-hour workday, has severe
9  limitations in reaching, handling, fingering, and feeling, and
10 would be likely absent more than four days per month.  The
11 Administrative Law Judge found that the opinion was not
12 persuasive, was not consistent with the record, and cited some
13 examples of treatment notes and records that would not support
14 Dr. Visalli's opinion.
15          The fifth was from Dr. Ramesh Cherukuri from
16 January 2, 2020.  It appears at 923 to 924.  It is, again, on a
17 checkbox form and very limiting, essentially similar to Dr.
18 Visalli's in terms of the limitations noted.  ALJ Koennecke
19 found it was not persuasive or consistent with the record at
20 page 18 of the Administrative Transcript.
21          In the first instance, of course, it is for the
22 Administrative Law Judge to weigh conflicting medical opinions,
23 *Veino v. Barnhart,* 312 F.3d 578, from the Second Circuit, 2002,
24 and it is not the Court's function to reweigh the medical
25 opinions.

1             In terms of supportability, as the Administrative Law
2    Judge noted, the opinion of Dr. Pradhan that was relied on for
3    the RFC determination is supported by MRI testing, which showed
4    only mild to moderate abnormal findings, the fact that
5    Dr. Cherukuri, plaintiff's neurologist, recommended only
6    conservative treatment, the fact that plaintiff declined EMG and
7    nerve conduction studies, as well as injections, the fact she
8    was referred to physical therapy and chiropractic care,
9    conservative -- relatively conservative treatment, and the fact
10   that the treatment notes do not support the more significant
11   limitations set forth in those two findings from medical source
12   statements from plaintiff's physicians.
13            The only significant supporting treatment note,
14   really, from Dr. Visalli occurs on the day that he rendered his
15   medical source statement.  Those two opinions are not consistent
16   with the opinions of Dr. Cherukuri, Dr. Wolf, or Dr. Pradhan.
17   It's -- there is an argument that was raised by the plaintiff
18   that there are limitations in Dr. Puri and Dr. Wolf's medical
19   source statements that were not adopted and included in the RFC.
20   It's well established, however, that an ALJ is not required to
21   adopt every portion of an opinion that is found to be
22   persuasive.  In this case, Dr. Pradhan's opinion was found very
23   persuasive and does support the RFC finding.
24            I note, moreover, that if there was error in not
25   including moderate limitations in standing, walking, sitting,

1  lifting, pushing, or pulling, that would be harmless.  Such
2  limitations do not preclude the ability to perform light work,
3  *Raymonda C. v. Commissioner of Social Security*, 2020 WL 42814,
4  Northern District of New York, January 1, 2020, and *April B. v.*
5  *Saul*, 2019 WL 4736243 from the Northern District of New York,
6  September 27, 2019.
7           I am unable to say that a reasonable factfinder would
8  have to conclude that plaintiff cannot perform light work with
9  only occasional stooping, *White v. Brault -- Berryhill*, I'm
10 sorry, 753 F. App'x 80 from the Second Circuit, Court of
11 Appeals, February 7, 2019, and *Brault*, which I cited earlier.
12          In terms of squatting and kneeling, limitations that
13 were opined by Dr. Puri under SSR 83-14, climbing, kneeling, and
14 crawling limitations have little or no effect on light work job
15 base.  Similarly, under Social Security Ruling 85-15, squatting
16 and kneeling limitations would similarly have little effect.
17 The moderate -- when it comes to the moderate limitation in
18 reaching, the ALJ accepted Dr. Pradhan's opinion and, obviously,
19 it is in conflict with one medical opinion, but it was for the
20 ALJ to resolve that inconsistency.  In any event, if it was
21 error, it was harmless.  It was plaintiff's burden to establish
22 the limitation in the ability to overhead reach and that it
23 would preclude light work, and there's no proof that a
24 limitation -- a moderate limitation in overhead reaching would
25 preclude light work, *Michael M. v. Saul*, 2019 WL 6611302 from

1   the -- from the Northern District of New York, December 5, 2019.
2              There was an argument that Dr. Wiener's opinion was
3   not referenced in the -- in the ALJ's decision, which, of
4   course, is true.  Dr. Bradley Wiener issued an opinion after
5   conducting an independent medical examination on October 25,
6   2017.  It appears at 329 to 334 of the Administrative
7   Transcript.  The conclusion reached by Dr. Wiener is that the
8   claimant demonstrates a temporary total disability, however, the
9   claimant's disability is predominantly due to her non-orthopedic
10  conditions.  The claimant has poorly controlled hypertension, as
11  well as significant subjective complaints of pain without
12  objective corroboration.  The conclusion that plaintiff is
13  incapable of returning to work in any capacity and is
14  temporarily totally disabled, it opines on an issue that is
15  specifically reserved to the Commissioner and there's no duty
16  for the ALJ to weigh that opinion, 20 C.F.R. Section
17  404.1520(b)(C)(3)(i).  Although, I would agree that it probably
18  would have been a better practice for the Administrative Law
19  Judge to reference the opinion and to say just that.
20  Nonetheless, I don't find error and if there was error, it is
21  harmless error.
22             In terms of weighing plaintiff's symptomology, what
23  we used to consider or call credibility, an ALJ is required to
24  take into account any subjective complaints by a claimant of
25  pain when a -- making a five step disability analysis, but is

1  not required to blindly accept the subjective testimony of a
2  claimant.  Instead, the ALJ retains broad discretion to evaluate
3  a claimant's subjective testimony, including testimony
4  concerning pain and when doing that, must consider a variety of
5  factors which would ordinarily inform the issue of credibility
6  in any context, including the claimant's credibility, his or her
7  motivation, and the medical evidence in the record, and, of
8  course, must explain the finding and must -- the finding must be
9  supported by substantial evidence.
10              Relevant factors to be considered when evaluating a
11 claimant's subjective symptomology claims include daily
12 activities; location, duration, frequency, and intensity of the
13 symptoms; precipitating and aggravating factors; type, dosage,
14 effectiveness, and side effects of any medications taken; other
15 treatment received; and other measures taken to relieve the
16 symptoms.
17              In this case, the Administrative Law Judge followed
18 the two-step protocol that is prescribed for evaluating
19 plaintiff's reported symptomology.  The decision of the
20 Administrative Law Judge is entitled to considerable deference,
21 *Penfield v. Colvin*, 563 F. App'x 839, Second Circuit, 2014.
22              In this case, ALJ Koennecke cited medical findings,
23 mild to moderate findings on MRI testing, the refusal of
24 plaintiff to undergo EMG and nerve conduction studies and to
25 take epidural injections, the inconsistency of those opinions

1  with Dr. Wolf, Dr. Puri, Dr. Pradhan, and the conservative

2  treatment recommended, including by his neurologist.  I note

3  that plaintiff was referred to a chiropractor on several

4  occasions as reflected in 347, 764, and 784 of the

5  Administrative Transcript.  That, notwithstanding any argument

6  to the contrary by the plaintiff, is a proper consideration when

7  evaluating reports of pain, 20 C.F.R. Section 404.1529, *Riley v.*

8  *Barnhart*, 2008 WL 10655336 from the Northern District of New

9  York, 2008.

10         The last argument is the step five argument.

11 Clearly, it is the Commissioner's burden at step five to

12 determine the availability of work in the -- available in the

13 national economy that plaintiff is capable of performing that

14 can be satisfied by resorting to the medical vocational

15 guidelines.  The only additional nonexertional limitation in the

16 RFC is occasional stooping, which under SSR 83-10 and 85-15,

17 does not significantly reduce the job base on which the grids

18 are predicated.  Accordingly, I find no error in relying on the

19 grids to find no disability.

20         In sum, I conclude that correct legal principles were

21 applied in this case and the resulting determination is

22 supported by substantial evidence.  I will therefore grant

23 judgment on the pleadings to the defendant and order dismissal

24 of plaintiff's complaint.

25         Thank you, both.  I hope you have a good afternoon.

1           MR. ANTONOWICZ:  Thank you, Judge.

2           MR. LAWRENCE:  Thank you.

3           (Time noted:  11:40 a.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1
 2
 3
 4                CERTIFICATE OF OFFICIAL REPORTER
 5
 6
 7            I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,
 8   NYRCR, Official U.S. Court Reporter, in and for the United
 9   States District Court for the Northern District of New York, DO
10   HEREBY CERTIFY that pursuant to Section 753, Title 28, United
11   States Code, that the foregoing is a true and correct transcript
12   of the stenographically reported proceedings held in the
13   above-entitled matter and that the transcript page format is in
14   conformance with the regulations of the Judicial Conference of
15   the United States.
16
17            Dated this 22nd day of June, 2022.
18
19            s/ Hannah F. Cavanaugh_____
20            HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR
21            Official U.S. Court Reporter
22
23
24
25
```